■ MARVIN A. HOLLAND et al., Appellants, v BANK OF SMITHTOWN, Respondent. (And a Third-Party Caption.)—In an action to recover the proceeds of checks cashed by the defendant bank, which checks allegedly have forged indorsements, the plaintiffs, partners in a law firm, appeal from a judgment of the Supreme Court, Suffolk County, entered January 25, 1977, which is in favor of the defendant bank, upon a jury verdict. Judgment reversed, on the law, and new trial granted, with costs to abide the event. In view of the fact that Trial Term had concluded, as a matter of law, that the defenses of actual or implied authority were not made out, it was error to submit the following question to the jury: "Were the signatures on the checks unauthorized and thus forgeries?" The interrogatory, although supposedly aimed at the question of apparent authority, was at best confusing and at worst a submission on an issue that was no longer in the case— that of actual authority. Contrary to the position taken in the concurring memorandum, the record discloses more than enough evidence to support a charge on apparent authority. Although the plaintiff law firm did not have an account at the defendant bank at the time the funds were allegedly stolen, it appears that some of the partners did have individual accounts with defendant and that plaintiff's secretary was regularly dispatched to defendant for the purpose of negotiating petty cash checks. Furthermore, the predecessor firm to that of the plaintiffs did maintain an account with defendant and the secretary, Miss Brock, had been employed by that predecessor firm. Cohalan, J. P., Margett and Damiani, JJ., concur; Shapiro, J., concurs in the result, with the following memorandum: I agree that the judgment should be reversed, but I differ somewhat with the majority as to the reasons for a reversal. This is an action by the plaintiffs to recover the proceeds of checks cashed by the defendant bank, which resulted in a jury verdict in favor of the bank. The plaintiffs are three attorneys who practiced law in Smithtown under the firm name of Holland, Greshin & Sloane or Holland & Greshin. In 1975 they discovered that, between 1969 and 1975, the Bank of Smithtown had cashed some 255 checks, totaling $62,585.52, made payable to the plaintiff law firm. The cash was given to Miss Irene Brock, plaintiffs' secretary, on each check-cashing occasion after she had indorsed each check with the firm name followed by her personal indorsement and account number at the bank, where she kept a personal account. The plaintiff law firm had no account at the bank. The complaint contains three causes of action. The first is for money had and received in the sum of $62,585.52, covering the full six-year period from 1969 to 1975. The second is in conversion, based on section 3-419 of the Uniform Commercial Code, and seeks to recover $42,953.50, the total amount of the checks cashed during the three-year period from 1972 to 1975. The third is for negligence and covers the same three-year period. (By consent, this cause of action was dropped at the close of plaintiffs' case.) The case was decided by the jury on the issue of "apparent authority", the trial court having concluded that as a matter of law the defenses of "actual or implied authority" had not been made out. In its charge on the issue of "apparent authority" the trial court said: "the bank contends that Brock had apparent authority to negotiate and cash checks and that the Plaintiffs themselves were guilty of negligence in handling their business affairs in the way they allowed Miss Brock to handle checks and this whole account and this negligence substantially contributed to the making or forging of the checks by Miss Brock. * * * You may consider whether by reason of the authority that the Plaintiffs did give

her authority over this HFC account and the handling of checks for that account, and whatever you have heard that she did relative to this account, whether by reason of those facts the Defendant bank would have been justified in assuming that she had authority to endorse the checks as she did and to cash them." At the conclusion of the charge, and in accordance therewith, the jurors were given a ballot with a number of questions thereon and they were told that if they answered the first one in the negative they need not proceed to the others. The first question was: "Were the signatures on the checks unauthorized and thus forgeries?" At the conclusion of the first day's deliberation the jury sent the court a note reading: "We cannot agree on the term 'Apparent authorization', can you help us?" Instead of rephrasing and clarifying it, the reporter, at the direction of the court, merely reread to the jury the portion of the charge dealing with apparent authority. On its second day of deliberation, the jury advised the court in writing that "We are equally divided on number one question, how do we go on?" At that juncture the plaintiffs asked the court to clarify the meaning of "apparent authority" for the jury. Instead of clarifying that issue, which was clearly puzzling the jurors, and while admitting that "It doesn't answer your question but it's all I can tell you", the court simply directed the jury to retire and "give it another whirl, so to speak". Within a short time, and by a vote of five to one, the jury answered the question in the negative and the court thereupon directed a verdict for the defendant bank. Without detailing the evidence in this case, it seems clear to me that having dismissed the defenses of "actual or implied authority" there was, on the facts in this record, no basis at all for a claim of "apparent authority."* The contention of the respondent bank that *Standard Steam Specialty Co. v Corn Exch. Bank* (220 NY 478) "plainly supports the bank's position that we are here dealing not with a forged endorsement, *but with an authorized signature* and a subsequent misappropriation of the proceeds of the checks for which the defendant cannot be held liable" (emphasis supplied) runs counter to the very proposition submitted to the jury, for the bank overlooks the fact that the specific issue submitted to the jury—and which it now says is not the issue—is that the interrogatory directed the jury to decide whether the signatures on the checks were "unauthorized and thus forgeries". Thus, while the court dismissed the defenses of actual or implied authority and charged the jury only on "apparent authority", its interrogatory dealt with the question of authorization and not apparent authority. Assuming, however, that the interrogatory was not in itself confusing and misleading, particularly since it was phrased in the negative, and further assuming that there was here an issue of "apparent authority", and I do not believe there was, the court's charge on that question was even more confusing and misleading than the interrogatory. Merely having the stenographer repeat the same words when

---

* The bank's executive vice-president, George Gearety, Jr., testified that the checks had ,been cashed "on the faith of Irene Brock" and "in reliance on Irene Brock's status as a depositor with an account in the bank"; that the checks would not have been cashed if she had not kept her personal account at the bank, and that *her signature and account number* were required on each check so that the bank would have proper recourse if anything went wrong. In addition, the bank's own manual provided: "All *business* checks drawn on other banks must be deposited unless referred for official approval" (emphasis in original). It is undisputed that on none of the 255 occasions when these business checks were cashed were any of the checks "referred for official approval".

the jurors indicated that they did not understand the charge on that subject certainly could be of no aid to them. In addition, the clarification charge requested by the plaintiffs was clearly proper and should have been given. Were it not for the fact that the jury was directed by the court not to reach the questions dealing with negligence on the part of the plaintiffs contributing to the occurrence if it answered the first interrogatory favorably to the defendant—I would not only vote to reverse the judgment appealed from but to direct a verdict for the plaintiffs. However, in the present posture of the case, I believe that there should be a new trial of all of the issues *de novo.*