COMMONWEALTH *vs.* HENRY W. BALDWIN.

Signing a promissory note in the name of a fictitious firm, with intent to defraud, and falsely representing that the firm consists of the writer and another person, are not forgery.

THOMAS, J.    This is an indictment for the forgery of a promissory note. The indictment alleges that the defendant at Worcester in this county " feloniously did falsely make, forge and counterfeit a certain false, forged and counterfeit promissory note, which false, forged and counterfeit promissory note is of the following tenor, that is to say :

'$457.88.   Worcester, Aug. 21, 1856.   Four months after date we promise to pay to the order of Russell Phelps four hundred fifty seven dollars $\frac{88}{100}$, payable at Exchange Bank, Boston, value received.                        Schouler, Baldwin & Co.'
with intent thereby then and there to injure and defraud said Russell Phelps."

The circumstances under which the note was given are thus stated in the bill of exceptions : Russell Phelps testified that the note was executed and delivered by the defendant to him at the Bay State House in Worcester, on the 21st of August 1856, for a note of equal amount, which he held, signed by the defendant in his individual name, and which was overdue ; and that in reply to the inquiry who were the members of the firm of Schouler, Baldwin & Co. the defendant said, " Henry W. Baldwin, and William Schouler of Columbus." He further said that no person was represented by the words " & Co " It appeared in evidence that the note signed Schouler, Baldwin & Co. was never negotiated by Russell Phelps. The government offered evidence which tended to prove either tha there never had been any partnership between Schouler and Baldwin, the defendant ; or, if there ever had been a partnership, that it was dissolved in the month of July 1856.

The question raised at the trial and discussed here is whether the execution and delivery of the note, under the facts stated, and with intent to defraud, was a forgery.

It would be difficult perhaps by a single definition of the crime of forgery to include all possible cases. Forgery, speaking in general terms, is the false making or material alteration of or addition to a written instrument for the purpose of deceit and fraud. It may be the making of a false writing purporting to be that of another. It may be the alteration in some material particular of a genuine instrument by a change of its words or figures. It may be the addition of some material provision to an instrument otherwise genuine. It may be the appending of a genuine signature of another to an instrument for which it was not intended. The false writing, alleged to have been made, may purport to be the instrument of a person or firm existing, or of a fictitious person or firm. It may be even in the name of the prisoner, if it purports to be, and is desired to be received as the instrument of a third person having the same name.

As a general rule however, to constitute forgery, the writing falsely made must purport to be the writing of another party than the person making it. The mere false statement or implication of a fact, not having reference to the person by whom the instrument is executed, will not constitute the crime.

An exception is stated to this last rule by Coke, in the Third Institute, 169, where A. made a feoffment to B. of certain land, and afterwards made a feoffment to C. of the same land with an antedate before the feoffment to B. This was certainly making a false instrument in one's own name; making one's own act to appear to have been done at a time when it was not in fact done. We fail to understand on what principle this case can rest. If the instrument had been executed in the presence of the feoffee and antedated in his presence, it clearly could not have been deemed forgery. Beyond this, as the feoffment took effect, not by the charter of feoffment, but by the livery of seisin — the entry of the feoffor upon the land with the charter and the delivery of the twig or clod in the name of the seisin of all the land contained in the deed — it is not easy to see how the date could be material.

The case of *Mead* v. *Young*, 4 T. R. 28, is cited as another exception to the rule. A bill of exchange payable to A. came

into the hands of a person not the payee but having the same name with A. This person indorsed it. In an action by the indorsee against the acceptor, the question arose whether it was competent for the defendant to show that the person indorsing the same was not the real payee. It was held competent, on the ground that the indorsement was a forgery, and that no title to the note could be derived through a forgery. In this case of *Mead* v. *Young*, the party assumed to use the name and power of the payee. The indorsement purported to be used was intended to be taken as that of another person, the real payee.

The writing alleged to be forged in the case at bar was the handwriting of the defendant, known to be such and intended to be received as such. It binds the defendant. Its falsity consists in the implication that he was a partner of Schouler and authorized to bind him by his act. This, though a fraud, is not, we think, a forgery.

Suppose the defendant had said in terms, " I have authority to sign Schouler's name," and then had signed it in the presence of the promisee. He would have obtained the discharge of the former note by a false pretense, a pretence that he had au-thority to bind Schouler. " It is not," says Sergeant Hawkins, " the bare writing of an instrument in another's name without his privity, but the giving it a false appearance of having been executed by him, which makes a man guilty of forgery." 1 Hawk. *c.* 70, § 5.

If the defendant had written upon the note, " William Schouler by his agent Henry W. Baldwin," the act plainly would not have been forgery. The party taking the note knows it is not the personal act of Schouler. He does not rely upon his signature. He is not deceived by the semblance of his sig-nature. He relies solely upon the averred agency and authority of the defendant to bind Schouler. So, in the case before us, the note was executed in the presence of the promisee. He knew it was not Schouler's signature. He relied upon the de-fendant's statement of his authority to bind him as partner in the firm of Schouler, Baldwin & Co. Or if the partnership had

in fact before existed but was then dissolved, the effect of the defendant's act was a false representation of its continued existence.

In the case of *Regina* v. *White*, 1 Denison, 208, the prisoner indorsed a bill of exchange, " per procuration, Thomas Tomlinson, Emanuel White." He had no authority to make the indorsement, but the twelve judges held unanimously that the act was no forgery.

The *nisi prius* case of *Regina* v. *Rogers*, 8 Car. & P. 629, has some resemblance to the case before us. The indictment was for uttering a forged acceptance of a bill of exchange. It was sold and delivered by the defendant as the acceptance of Nicholson & Co. Some evidence was offered that it was accepted by one T. Nicholson in the name of a fictitious firm. The instructions to the jury were perhaps broad enough to include the case at bar, but the jury having found that the acceptance was not written by T. Nicholson, the case went no further. The instructions at *nisi prius* have no force as precedent, and in principle are plainly beyond the line of the settled cases.

The result is that the exceptions must be sustained and a new trial ordered in the common pleas. It will be observed however that the grounds on which the exceptions are sustained seem necessarily to dispose of the cause.

*Exceptions sustained.*

*H. Chapin & G. F. Hoar*, for the defendant, cited *Commonwealth* v. *Ayer*, 3 Cush. 150; D. Davis's Justice (3d ed.) 456; 3 Inst. 169; 3 Chit. Crim. Law, 1037; Report on Penal Code of Mass. Forgery, 1, 7, & notes; *Rex* v. *Webb*, Russ. & Ry. 405; *Rex* v. *Watts*, Russ. & Ry. 436; *Regina* v. *White*, 1 Denison, 208.

*S. H. Phillips*, (Attorney General,) for the Commonwealth, cited *The King* v. *Bolland*, 1 Leach (4th ed.) 83; *Rex* v. *Francis*, Russ. & Ry. 209; *Rex* v. *Peacock*, Russ. & Ry. 278; *Rex* v. *Whiley*, Russ. & Ry. 90; *Regina* v. *Rogers*, 8 Car. & P. 629 · *Commonwealth* v. *Chandler*, Thach. C. C. 187; *Rex* v. *Holden*, . Russ. & Ry. 154; 2 Russell on Crimes (7th Amer. ed.) 354.