**WESTERN STATES INSURANCE COMPANY, Appellee,**

v.

**The CONTINENTAL INSURANCE COMPANY, Appellant,**

and

**Rickey D. SNYDER, Defendant.**

**No. 98–753.**

Supreme Court of Iowa.

Nov. 17, 1999.

Michael J. Coyle and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellant.

Michael P. Byrne and Jed E. Brokaw of Lane & Waterman, Davenport, for appellee.

Considered by CARTER, P.J., and LAVORATO, SNELL, CADY, and SCHULTZ,* JJ.

SNELL, Justice.

Defendant, Continental Insurance Company, appeals a district court ruling in favor of the plaintiff, Western States Insurance Company, in a declaratory judgment action brought to establish the status and scope of an automobile liability insurance policy during the sale of a vehicle. Continental maintains the district court erred when it granted Western States' motion for summary judgment and ruled that the seller of a car could not be held liable to third parties for the buyer's negligence, owing to the fact that the seller was no longer the owner of the auto, and did not have an insurable interest. Defendant claims that the court further erred in denying its own motion for summary judgment, and in failing to hold that the seller's policy covered the buyer's actions until title to the vehicle was physically transferred. We affirm the decision of the district court.

## I. Background Facts and Proceedings

Western States issued Darryl Fiscus an automobile insurance policy on a 1990 Chevrolet. On December 14, 1993, during the term of coverage, Fiscus sold the car to Rickey Snyder. Snyder paid for the vehicle in full and acquired possession. He could not, however, register the car in his own name until Fiscus satisfied an obligation to his lienholder and requested the certificate of title. Fiscus made the appropriate arrangements but did not receive the title certificate until January 7, 1994. On January 6, prior to an exchange of documents, Snyder was involved in an accident with Gary Steinman, wherein it was alleged Snyder negligently drove the Chevrolet over the center line precipitating a head on collision.

Steinman and his wife filed suit against Fiscus and Snyder for damages to their persons and their property. Fiscus requested, and was granted, a motion for summary judgment on the ground that he was no longer the owner of the vehicle at the time of the accident. Following the district court's ruling, the Steinmans reached a settlement with the Continental Insurance Company, their uninsured/underinsured motorist carrier. Pursuant to that accord, Continental took a full assignment of the Steinman's tort claims.

A controversy then ensued over whether the policy issued to Fiscus extended coverage to Snyder as an authorized driver of the Chevrolet. Western States claimed Fiscus effectively transferred ownership of the vehicle prior to the accident, thereby rendering the policy inoperative.

Western States subsequently brought a declaratory judgment action against Snyder and Continental. Snyder failed to obtain representation and did not answer the petition. Continental counterclaimed, averring Fiscus was the owner under Iowa Code section 321.45(2) (1997), which establishes a conclusive proprietary interest

* Senior judge assigned by order pursuant to    Iowa Code section 602.9206 (1999).

with the holder of the certificate of title. Both sides filed motions for summary judgment and the court ruled in favor of Western States, concluding Fiscus's sale of the auto relieved him of responsibility for Snyder's actions and voided the insurance policy.

A default judgment was entered against Snyder and Continental appealed.

## II. Scope of Review

A declaratory action tried in equity is generally afforded a de novo review. Iowa R.App. P. 4; *Mead v. Iowa State Bd. of Parole*, 331 N.W.2d 102, 103 (Iowa 1983). However, this case was resolved on summary judgment so we must examine the district court's ruling for correction of errors at law. *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 903 (Iowa 1996).

## III. Discussion

Transfer of ownership in an automobile is controlled by statute. Iowa Code section 321.45(2) provides in pertinent part that:

> No person shall acquire any right, title claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to the person for such vehicle. . . .
>
> d. Except for the purposes of section 321.493. Except in the above enumerated cases, no court in any case of law or equity shall recognize the right, title, claim or interest of any person in or to a motor vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter.

Iowa Code section 321.493 determines liability for damages:

> 1. In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage. For purposes of this subsection, *"owner"* means the person to whom the certificate of title for the vehicle has been issued or assigned. . . .
>
> 2. A person who has made a bona fide sale or transfer of the person's right, title, or interest in or to a motor vehicle and who has delivered possession of the motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of the motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability under this subsection, whether such sale or transfer was made.

In *State Farm Mutual Insurance Co. v. Wyant*, 191 N.W.2d 689 (Iowa 1971), we explained that section 321.45(2) is the provision which ordinarily applies between an alleged car owner and his insurer, whereas section 321.493 applies between an alleged car owner and a third person when the third person asserts a damage claim against the owner. *Wyant*, 191 N.W.2d at 692; *see, e.g., State Auto. & Cas. Underwriters v. Farm Bureau Mut. Ins. Co.*, 257 Iowa 56, 131 N.W.2d 265 (1964); *Calhoun v. Farm Bureau Mut. Ins. Co.*, 255 Iowa 1375, 125 N.W.2d 121 (1963). Thus, if an owner of a car sells and delivers it to a buyer, the buyer has a collision with a third person before the title certificate is transferred, and the third person sues the seller, the seller has a defense in that he is not in fact the owner by virtue of exception (*d*) in section 321.45(2), and section 321.493. *Wyant*, 191 N.W.2d at 692.

Appellant contends that Fiscus was still the owner of the Chevrolet at the time of the accident because title never formally passed from Fiscus to Snyder in accor-

dance with section 321.45(2). In *Wyant,* we noted that "between the seller and his own insurer, the title certificate controls the question of ownership since none of the exceptions in section 321.45(2) is applicable." *Id.* Continental seizes on this remark and submits that Snyder was not a third party, but a prospective buyer, and there is nothing in *Wyant* or in section 321.45(2) to suggest that a dispute between a seller and an insurer should be treated any differently than a dispute between a buyer and an insurer. We disagree.

Iowa Code section 321.493 is clear in that a seller shall not be accountable for any damage resulting from the negligent operation of the vehicle by another, and that the purchaser shall be deemed the owner for purposes of fixing liability. This exception does not simply preclude third parties from seeking redress against the seller, it prevents the buyer from denying ownership and avoiding responsibility for his actions. It would be incongruous of us to prohibit third parties from initiating proceedings against the seller, while extending the prerogative to buyers.

As a final justification for reversal, Continental posits that, ownership notwithstanding, Fiscus retained an insurable interest in the vehicle prior to transfer of title. We find no merit in this argument. Whether an insurable interest survived subsequent to the sale of the auto is irrelevant. Section 321.493 distinguishes ownership for the purpose of establishing liability. Such an exercise would be pointless if we held that a seller's insurer could be forced to compensate third parties irrespective of proprietorship.

For these reasons, we find that the automobile liability insurance policy issued to Fiscus did not extend coverage to Snyder. Western States is therefore not required to indemnify or otherwise defend Snyder in the Steinman lawsuit.

**AFFIRMED**.

All justices concur except CARTER, J., who concurs specially.

CARTER, Justice (specially concurring).

I concur in the opinion of the court but write separately to caution against adopting an unwavering reliance on the certificate-of-title laws to establish the element of ownership as required by liability insurance policies. This court may not have made the best choice when opting to use the certificate-of-title law as the measure of ownership in insurance policy disputes. Property law would appear to be a more appropriate measure of the parties' legitimate expectations. The dilemma that this case highlights, *e.g.,* the responsibility of a seller's liability insurer to a consent driver after sale and delivery of the insured motor vehicle, is not the only situation in which reliance on the certificate-of-title laws will provide an unreasonable result. Persons who buy motor vehicles, new or used, are not in total control of when the certificate of title will be transferred. Yet, these persons can reasonably expect to drive their newly acquired vehicles home from the dealer.

There are thousands of transactions in which new car buyers are operating their newly acquired vehicles while waiting for the titles to be transferred at the county treasurer's office. Under the principles applied in the present case, they will not have the benefit of the seller's liability insurance. Consequently, it is essential that these new buyers be able to acquire their own liability insurance effective immediately upon delivery of the motor vehicle. If they do acquire such insurance and it provides for indemnification of the "owner" of the motor vehicle, this should be construed to cover a new car buyer between the time the vehicle is delivered and the time a new certificate of title is issued.